# Tinker *v.* The State.

*Indictment for Selling Liquor without License.*

1. *Sale of imported liquors, in original packages.*—Where bottles containing quarts, pints, or half pints of spirituous liquors, each wrapped in a separate paper and labeled with the kind and quantity of liquor contained therein and the name of the shipper, were delivered to a carrier in Tennessee for transportation into Alabama, and the carrier, without the knowledge or agency of the consignor, put such bottles in boxes provided by itself, and thus transported them into Alabama, the bottles, and not the boxes, are "original packages."

[Tinker v. The State.]

2. *Same; burden of proof.*—Where, on a trial of defendant for selling liquor without a license, the State established a *prima facie* case by proof of a sale by the defendant within twelve months before the finding of the indictment, and within the county, the burden was then cast on the defendant to show that the liquor sold by him was such as he had the right to sell.

3. *General charge on evidence.*—When there is any conflict in the evidence on a material matter, the general charge should not be given.

4. *Explanation by court of charges given.*—Where the jury reported to the court that they could not reconcile two written charges given, it was not error for the court to state to the jury that there was no conflict between the two charges, where such was the fact.

APPEAL from the Circuit Court of Jackson.

Tried before the Hon. JOHN B. TALLY.

The evidence in this case is sufficiently stated in the opinion. In the oral charge to the jury the court instructed them as follows: "I apprehend that it would be no excuse to the defendant that the railroad company, without authority from or knowledge of Cureton, put the bottles, or some of them, in boxes, and shipped them that way, if the defendant sold separately any one of the bottles so placed in boxes and shipped." The defendant excepted to this part of the oral charge, and separately excepted to the refusal of the court to give each of the following written charges requested by him: 1. "If the importer shipped the bottles as so many separate packages, and the transporter or carrier put the bottles in boxes for convenience or otherwise, then, and in that event, the bottles as shipped were the original packages, and not the boxes with the bottles in them." 2. "If the jury believe from the evidence that the bottles were shipped by the importer as so many separate packages, the fact, if it be a fact, that the carrier put said bottles in boxes would make no difference. The defendant, as the agent of the importer, would have the right to sell the bottles separately, as they were shipped, provided the jury believe from the evidence that the sale proven was in July, 1890." 3. "If the jury believe the evidence, they should find the defendant not guilty." At the request of the solicitor the court gave the following written charge to the jury, to the giving of which charge the defendant duly excepted: "4. The burden of proof is on the defendant to show that the particular bottle of whiskey sold to the witness was not one of the bottles transported in the box, if you find from the evidence that a bottle of whiskey containing a pint or half pint was sold by the defendant to the witness within this county, within twelve months before the finding of this indictment, and that some of the bottles

[Tinker v. The State.]

of liquor were transported in boxes, and others transported loosely on the floor of the car." At the request of the defendant the court gave to the jury the following written charge: "5. If the jury believe from the evidence that the whiskey sold by the defendant was whiskey imported from Chattanooga, Tennessee, by G. W. Cureton, the importer, and sold by the defendant, as agent for the said Cureton, in the condition that it was shipped from Chattanooga, Tennessee—that is, if the bottles, among which the one sold was shipped from Chattanooga, Tennessee, were shipped separately as so many separate packages, and the one sold was sold by the defendant in the same way some time in July, 1890, then they should find the defendant not guilty." The bill of exceptions recites: "After the jury had gone out to consider their verdict, and remained out all night, they returned into court next morning, and reported to the court that they could not agree upon a verdict. Whereupon, the court asked them what was the trouble, and they said, 'Here is one charge that we can convict the defendant under'—exhibiting to the court charge No. 4—'and here is a charge we can acquit the defendant under'—exhibiting to the court charge No. 5. Thereupon the court told the jury 'that there was no conflict in the two written charges given them.' To this remark of the court to the jury the defendant then and there duly excepted."

WM. L. MARTIN, Atorney-General, for the State.

THORINGTON, J.—Appellant was indicted in February, 1891, and convicted, for selling liquor without a license. The testimony for the State showed the sale by defendant of a half pint of whisky in said county, and within twelve months before the finding of the indictment ; that such sale occurred in July or early in August, 1890, but whether before or after the 8th day of August, 1890, did not clearly appear.

The defendant's testimony tended to show that he was the agent at Bridgeport, Ala., for one Cureton, who carried on business at Chattanooga, Tennessee ; that the latter on the 5th day of August, 1890, delivered to the railway company certain separate bottles containing quarts, pints and half pints of spirituous liquors, each bottle being enclosed in a paper bag, and tied with a string about the cork, the bags being labeled with the kind and quantity of liquor and Cureton's name, and all to be shipped to him at Bridgeport, Ala. The bottles were hauled to the depot by being

placed loosely, or separately, on drays, and the railroad agent at first refused to receive them unless the consignors would have them boxed ; but on being informed by Cureton that he intended to sell the liquor in bottles in Alabama, and that if they should be shipped in boxes he could only sell them there by the box, the agent consented to receive and did receive the bottles separately, and gave bills of lading therefor in that form, upon Cureton's signing a release. The bottles were received by defendant at Bridgeport from the railroad company, some being loose, or separate, and some (the testimony for the State showed) in boxes. The bottles were transported by the railway company, partly in separate packages, that is, each bottle placed singly on the floor of the car, and some in open boxes provided by the railway company, set in the car but not attached thereto ; and in receiving the liquor defendant received the boxes and contents, and hauled them with the separate bottles from the depot to his store in Bridgeport. The boxes, so far as appears to the contrary, were used by the railway company without Cureton's knowledge, and the proof failed to show whether the particular bottle of liquor shown to have been sold was sold from one of the boxes, or whether it was one of the loose or separate bottles. Defendant's testimony showed that the sale was made prior to August 8, 1890, and that the bottle sold was in the same condition as when received from the railway company.

The questions arising upon this record have been substantially decided by former decisions of this court and the decisions of the Supreme Court of the United States.— *Keith v. The State*, 91 Ala. 2 ; *Harrison v. The State*, Ib. 62 ; *Tinker v. The State*, 90 Ala. 638 ; *Leisy v. Hardin*, 135 U. S. 100. Tested by these decisions, the Circuit Court erred in that part of its oral charge excepted to by defendant, and in its refusal to give the first and second charges requested by the defendant.

There was no error in the refusal of the court to give the general affirmative charge requested by defendant. There was a conflict in the testimony as to whether the sale was made prior or subsequent to the 8th day of August, 1890, the date of the passage of the Act of Congress "to limit the effect of the regulations of commerce between the several states and with foreign countries in certain cases ;" and there was an inference of fact to be drawn by the jury from the testimony in regard to the mode of shipment of the bottle sold by defendant—that is, whether it was so shipped

[Tinker v. The State.]

by the importer, or by the railway company without the former's knowledge or agency.

The charge given at the request of the solicitor is erroneous, for the reason that it ignores the inquiry whether or not the bottles transported in boxes were so transported by the railway company without the knowledge or agency of the importer, or whether the bottles were delivered in boxes by the consignor to the carrier. The character of the article shipped as an original package is determined by the condition of the package when delivered for shipment by the importer to, and received by, the railway company or transporter, and not by the act of the latter, after receipt of the package by it, without the knowledge of the former. The bills of lading, in evidence, show that the bottles were delivered to the railway company by the shipper, and received by the company, in packages consisting of single bottles, and to the same effect was the oral testimony for the defense. The testimony of the State in rebuttal tended to show that some of the bottles, although wrapped separately in paper bags and each labeled, were received by defendant in boxes not fastened to, but loose, in the car, and were removed by defendant in the boxes to the store where he carried on business for the importer. The charge under consideration ignores the question arising from this testimony, whether the bottles received in boxes were so shipped by the importer, or placed in boxes by the railway company for its own convenience in handling the same.

We will add, however, inasmuch as the case is to be reversed, and will doubtless be retried, that the charge properly places the burden of proof on this question. The State on proof by it of a sale of liquor by the defendant within twelve months before the finding of the indictment, and within the county, established a *prima facie* case against the defendant, and the burden was then cast on him to show that the liquor so sold by him was the original package, and, in this case, that burden could only be met by defendant's showing that the liquor sold by him was one of the separate bottles, or if it was one from the box, that it was shipped by the importer as a separate or single package, and not in the box, and that the package when sold by him was in its original condition.

The charge numbered five, requested by defendant, conforms to the decisions of this court above cited and should have been given. Its refusal was error.

Defendant's exception to the remark of the judge to the jury that there was no conflict between charges numbered

four and five was not well taken. The remark simply asserts what is plainly the fact, and the circumstances made it proper that the court should so instruct the jury.

For the errors herein pointed out the judgment of the Circuit Court is reversed, and the cause remanded.

Reversed and remanded.